## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MILLENNIUM MARKETING GROUP, LTD., ORIN S. JOHNSON, GARY A. JONES, and AM-RAD INC.,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) | **Case No. 08-2198** |
| **SIMONTON BUILDING PROPERTIES, INC., SIMONTON HOLDINGS, INC., and FORTUNE BRANDS, INC.,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

---

### MEMORANDUM AND ORDER

This case is currently before the court on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 22). For the reasons discussed below, this motion is granted in part and denied in part.

### BACKGROUND

Plaintiffs Orin S. Johnson and Gary A. Jones developed and patented a flash-free welding technique for joining pieces of thermoplastic window frames. Johnson and Jones assigned ownership of those patents to Plaintiff Am-Rad, Inc., and Plaintiff

Millennium Marketing Group was engaged as the marketing agent for the other three Plaintiffs.

In April 2004, Millennium met with Defendant Simonton Building Properties, Inc. (Simonton)[1] for the purpose of seeking licensing protection, marketing consultation, or venture capital for the promotion of the newly-developed welding technique. Millennium and Simonton entered into a Non-Disclosure and Non-Use (NDNU) Agreement to protect any confidential information exchanged between the parties during negotiations.  In November 2004, the four plaintiffs entered into a License Agreement with Simonton for the license and use of the welding system.

The License Agreement, as amended in July 2005, granted Simonton exclusive license to use the welding technology in the fenestration industry in exchange for an up-front cash payment to Johnson and Jones.  Additionally, the License Agreement established a future joint venture between the parties to market the welding technologies. The License Agreement allowed Simonton use of Plaintiffs' patents to develop new joining techniques as long as the new techniques do not infringe on the patents.  But Simonton agreed to contribute to the joint venture any enhancements or additional patents Simonton acquired "as the result of placing into production products utilizing the

---

[1] According to the First Amended Complaint, Defendant Simonton Building Properties, Inc. is a wholly owned subsidiary of Defendant Simonton Holdings, Inc., which is itself a wholly owned subsidiary of Fortune Brands Home and Hardware, LLC (not a defendant in this action), which in turn is a wholly owned subsidiary of Defendant Fortune Brands, Inc.  References to "Simonton" throughout this order are meant to indicate Simonton Building Properties, Inc.

[Plaintiffs' welding technology] which incorporates the claims of the patents . . . and improvements thereto."

Plaintiffs also allege in their complaint that they "enter[ed] into a relationship of confidence and trust and fiduciary relationship, as well as an implied agreement and/or an existing joint venture or partnership with [Simonton] to assist and jointly work with [Simonton] to develop and adapt the technology into a production process for the parties' joint ownership and profit."  Plaintiffs contend that, while cultivating this relationship, various Simonton executives reassured them that they were "partners" and were "in it together" and that Johnson and Jones "would be included 100% on any additional patents" obtained.

In December 2005 and again one year later in December 2006, Simonton applied for patents, both of which remain pending and neither of which names Johnson or Jones as an inventor.  Plaintiffs contend that these patent applications are enhancements or improvements to the patents they licensed to Simonton, and as such, Plaintiffs assert, they should be property of the parties' joint venture.

In 2006, Millennium filed two lawsuits against Simonton in Kansas state court, both of which were voluntarily dismissed.  Additionally, Simonton filed a declaratory judgment action in the Northern District of West Virginia, asking the court to resolve the parties' dispute over the two new patent applications.  That case was dismissed after the court declined to exercise jurisdiction because the patent applications were pending before the Patent and Trademark Office (PTO) and because the claims were not ripe for

review.  *Simonton Bldg. Prods., Inc. v. Johnson*, 553 F. Supp. 2d 642 (N.D. W. Va. 2008).

Plaintiffs' First Amended Complaint before this court alleges the following eleven causes of action: Count I - Breach of Fiduciary Duty; Count II - Breach of the Implied Covenant of Good Faith and Fair Dealing; Count III - Breach of the License Agreement; Count IV - Breach of the NDNU Agreement; Count V - Tortious Interference with Contracts; Count VI - Tortious Interference with Business Relationship and Business Expectancy; Count VII - Aiding and Abeting; Count VIII - Quantum Meruit/Unjust Enrichment; Count IX - Violations of the Trade Secrets Act of Minnesota (where Johnson and Jones reside and where Am-Rad is incorporated);  Count X - Violations of the Trade Secrets Act of Kansas (where Millennium is incorporated and where Am-Rad has its principal place of business); and Count XI - Violations of the Trade Secrets Act of West Virginia (where Simonton is incorporated and has its principal place of business).  Defendants seek dismissal of all eleven counts.

## MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

The court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to

relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atl.*, 127 S. Ct. at 1964-65. The court accepts the facts alleged in the complaint as true, even if doubtful in fact, *id.* at 1965, and views all reasonable inferences from those facts in favor of the plaintiff, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl.*, 127 S. Ct. at 1965 (citations omitted). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## DISCUSSION

Defendants ask this court to dismiss all eleven counts in the complaint based on nine different theories of relief.

### A.    Ripeness

Defendants request that Counts I, II, III, V, VI, and VII be dismissed given the outcome of *Simonton Building Products, Inc. v. Johnson*, 553 F. Supp. 2d 642, (N.D. W. Va. 2008). In that case, Simonton sought a declaratory judgment that its two new patent applications did not incorporate any part of the Am-Rad patents and thus did not need

to be contributed to the parties' joint venture.  Johnson, Jones, and Am-Rad[2] argued that the question was not ripe for review because the Simonton patent applications were still pending before the PTO.  The district court agreed, concluding that it "could not declare that the pending applications do not improve on the Am-Rad patents without reviewing their claims.  Because those claims have not yet been allowed by the PTO, and may be subject to some future modification, they lack the finality needed to make them 'fit for judicial decision.'" *Simonton*, 553 F. Supp. 2d at 651 (citation omitted).  Additionally, the court noted that any decision it might make could be undone or mooted by a subsequent ruling of the PTO.  Accordingly, the court dismissed these claims as not ripe for review.

Defendants argue that Plaintiffs' claims here are similarly moot to the extent that they rely on a determination that Simonton's two new patents enhance or improve upon Am-Rad's existing patents.

The ripeness doctrine is intended to prevent courts from getting unnecessarily entangled in "abstract disagreements."  *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (citation omitted).  To determine whether particular issues are ripe, a court must analyze whether the issues are fit for judicial determination; specifically the court should consider whether the issues involve any "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Id.* (citation omitted).

---

[2] Millennium was not a party to the West Virginia action.

To determine whether Simonton's new patents enhance or improve any claims in the Am-Rad patents, this court would need to compare and construe the exact claims in each patent. As the *Simonton* court noted, however, the claims in the Simonton patents have not yet been approved by the PTO. They are not, therefore, in their final form, and the PTO could issue a number of decisions that would undo or render moot any particular construction that this court may adopt. As such, this court agrees with the *Simonton* court that the issue of whether the Simonton patents constitute an enhancement or improvement on the Am-Rad patents is not yet ripe for judicial decision.

Plaintiffs admit that Count II (good faith and fair dealing) and Count III (breach of License Agreement) are premature, should this court adopt the reasoning of *Simonton*, to the extent that they require a determination that the Simonton patents fall within the language of the License Agreement. They argue, however, that those claims are still viable in part because they do not entirely rely on the unripe issue. Plaintiffs also maintain that none of their tort claims should be dismissed because none rely on the unripe issue. Specifically, Plaintiffs identify the following actions by Defendants that underlie Plaintiffs' claims:

> (a) intentionally drafting the Simonton Patent Applications to avoid or try to avoid Simonton's obligation to contribute them to the joint venture to be created under the License Agreement, (b) secretly filing the Simonton Patent Applications, (c) using, disclosing and misappropriating the Confidential Information and Trade Secrets and the fruits of the parties' joint efforts for their own personal gain, and (d) falsely taking the position that the apparatus, processes and technology disclosed in the Simonton Patent Applications were the result of Simonton's independent, but parallel research and development and belonged to Simonton, alone, and

7

that such apparatus, processes and technology were not the result of or based on the Confidential Information and Trade Secrets, or the parties' joint efforts, thereby excluding Johnson, Jones and Am-Rad from the ownership of and profit from such technology contrary to the parties' confidential and fiduciary relationship and implied agreement and/or existing joint venture or partnership.

Each of these actions, however, only supports Plaintiffs' claims for relief if the Simonton patents constitute enhancements or improvements of the Am-Rad patents.  If not—if the Simonton patents are based on information and technology that is Simonton's sole property— then Simonton is perfectly entitled to apply for patents, even secretly, without contributing anything to the parties' joint venture.  Similarly, Simonton only "falsely" takes the position that the information in its patent applications was its own if the court concludes that those applications constitute improper extensions of the Am-Rad patents.  Thus, despite Plaintiffs' efforts to recharacterize their claims as not relying on the unripe issue, the claims are nonetheless inextricably linked to the question of whether Simonton's two new patents enhance or improve upon Am-Rad's existing patents.

Plaintiffs suggest that even claims that rely on the unripe issue should be allowed to proceed through discovery to preserve evidence until the PTO has issued its determination and the claims have matured.  Given that ripeness is a jurisdictional issue, however, *Park Lake Res., LLC v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1135 (10th Cir. 2004), this court declines to proceed in this manner.

Counts I, II, III, V, VI, and VII are dismissed.

**B.    Quantum Meruit and Unjust Enrichment**

Defendants argue that Count VIII (Quantum Meruit/Unjust Enrichment) should be dismissed because of the valid and enforceable express contracts between the parties. Although Kansas law forbids quantum meruit claims when a written contract governs the issue, *Fusion v. Neb. Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1275 (D. Kan. 1996), *Whan v. Smith*, 285 P. 589, 591 (Kan. 1930), Plaintiffs contend that Count VIII seeks recovery for benefits they conferred to Defendants *outside* the parties' express agreements. Plaintiffs specifically allege that they assisted Simonton "in its efforts to prove out, develop and adapt" the welding technology, even though they were not required to do so under the terms of the License Agreement. Plaintiffs assert that Simonton cultivated a relationship outside the express terms of the parties' contracts by reassuring Plaintiffs that they were "partners" and were "in it together" and that Johnson and Jones "would be included 100% on any additional patents" obtained. In reliance on those representations, "Johnson and Jones disclosed their Confidential Information and Trade Secrets to Simonton, made numerous trips to Simonton's research and development facilities and production plants in order to assist and jointly work with Simonton in the development and adaptation of the technology into a production process, and provided consultation services, by phone and in person, throughout the development process." Thus, Plaintiffs' quantum meruit claim is based on contact not governed by the express agreements.

Defendants assert that to the extent Plaintiffs' quantum meruit claim is based on alleged disclosures of trade secrets or confidential information, it is preempted by state

trade secrets statutes.  But as noted above, Plaintiffs based this claim also on "additional services" they performed at Simonton's request and for its benefit.

Defendants request that Count VIII be dismissed as to Fortune Brands because the First Amended Complaint includes no allegation that Fortune Brands requested Plaintiffs provide any services to it or was otherwise in privity with Plaintiffs.  In the absence of privity, a quantum meruit claim can proceed if Plaintiffs conferred a benefit that Fortune Brands accepted "under such circumstances as reasonably to notify [it] that the one performing such services expected to be compensated" for them.  *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 848 (Kan. 1996).

Here, Plaintiffs specifically allege that Fortune Brand "acknowledged and accepted the benefits" of Plaintiffs' information, services, and consultation. But given that Fortune Brand was not a party to the express contracts between Plaintiffs and Simonton, it is unreasonable to conclude that Fortune Brand would have perceived that Plaintiffs were acting outside the express terms of the contracts and expected additional compensation.

Accordingly, Count VIII is dismissed as to Fortune Brands, but not as to the other defendants.

## C.      Failure to Allege Breach of NDNU Agreement

Defendants contend that Plainitffs have failed to allege facts that would support Count IV - Breach of the NDNU Agreement, asserted only against Simonton.  In the First Amended Complaint, Plaintiffs maintain that Simonton breached the NDNU

10

Agreement by disclosing confidential information and trade secrets to Fortune Brands. Defendants argue that only Millennium and Simonton were parties to the NDNU Agreement, and that Plainitffs have not identified any of *Millennium's* confidential information that was improperly disclosed.

Plaintiffs' First Amended Complaint, however, alleges that Millennium entered into the NDNU Agreement on behalf of Johnson, Jones, and Am-Rad. Accepting this allegation as true, *Bell Atl.*, 127 S. Ct. at 1964-65, the court concludes that Plaintiffs need not identify confidential information belonging solely to Millennium in order to allege a breach of that agreement, at least at this stage in the proceedings.

**D.     Failure to Allege Trade Secrets Violations**

Defendants assert that Plaintiffs have failed to adequately allege facts to support Counts IX, X, and XI, violations of the trade secrets act of Minnesota, Kansas, and West Virginia, respectively. All three state statutes are based on the Uniform Trade Secrets Act, and all require the existence of a trade secret—information that derives value from not being generally known and which is the subject of reasonable efforts to keep secret. Kan. Stat. Ann. § 60-3320; Minn. Stat. Ann. § 325C.01; W. Va. Code Ann. § 47-22-1. Additionally, each statute requires the misappropriation of that trade secret by either "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent." Kan. Stat. Ann. § 60-3320; Minn. Stat. Ann. § 325C.01; W. Va. Code Ann. § 47-22-1.

11

The First Amended Complaint includes a lengthy paragraph setting forth "Confidential Information and Trade Secrets," including "know-how, techniques, methods, processes, test results, knowledge based on experiments and tests, and other information relating to and enabling" the welding technique Johnson and Jones developed for joining window frames. Counts IX, X, and XI essentially parrot the statutory language by asserting that this information derives value from not being generally known, that Plaintiffs exercised reasonable efforts to maintain its secrecy, and that Defendants misappropriated the trade secrets by "acquiring such trade secrets with knowledge or with reason to know that such trade secrets were acquired by improper means and suing and/or disclosing such trade secrets without Johnson's, Jones's and Am-Rad's express or implied consent."

Defendants contend that the allegations in the complaint are insufficient to state a claim because Defendants helped to develop some of the information Plaintiffs identified as a trade secret and because the License Agreement allows Defendants to develop the technology using information Plaintiffs shared. Defendants thus argue that they were entitled to disclose and use the confidential information they received.

It seems, however, that Plaintiffs' theory of this claim focuses more on the improper acquisition of trade secrets rather than on the improper disclosure. Plaintiffs assert that the trade secrets claims are based on "Simonton's unauthorized use of Plaintiffs' Confidential Information and Trade Secrets . . . as well as Simonton's acquisition of the same through improper means." For support, Plaintiffs cite to

paragraphs 22-28 and 38 of their First Amended Complaint.  These paragraphs primarily discuss how Johnson, Jones, and Am-Rad entered into a relationship of confidence and trust with Simonton and how Simonton cultivated that relationship by reassuring them that they were "partners," "in it together," and "would be included 100%" on future profits.  Plaintiffs allege that Simonton induced the relationship of trust to improperly obtain trade secret information.  These allegations, if true, could form the basis for a claim under the trade secrets act.

The one specific example of disclosure that Plaintiffs provide is the publication of the Simonton patents, which include some of the alleged trade secret information. Defendants assert that Plaintiffs had ample time to object to the publication of those patents, and because Plaintiffs did not do so, Defendants claim they are estopped from objecting now.  At this stage in the proceedings, however, the court is limited to the claims as stated on the face of the complaint.  *Bell Atl.*, 127 S. Ct. at 1974.  Nothing in the complaint suggests that Plaintiffs should be estopped from protesting the information published in Simonton's patent applications.

The motion to dismiss is denied as to Counts IX, X, and XI.

**E.      Statute of Limitations**

Defendants maintain that Plaintiffs' tort claims are barred by the two-year statute of limitations, which begins to run when the cause of action accrues—when the "fact of injury becomes reasonably ascertainable to the injured party."  Kan. Stat. Ann. 60-513(b).  Defendants argue that because Millennium filed its first lawsuit against

Simonton in February 2006, Plaintiffs must surely have known of the facts giving rise to this lawsuit by that date.  Plaintiffs respond, however, that Millennium's action against Simonton was based on different wrongful conduct—that stemming from Simonton's negotiations with any company in the industry.  Additionally, the February 2006 action did not include any suggestion that Defendants had misappropriated trade secrets. Viewing allegations in the complaint in the light most favorable to Plaintiffs, as is appropriate at this stage in the proceedings, *Sunrise Valley, LLC v. Kempthorne*, 528 F.3d 1251, 1254 (10th Cir. 2008), the court cannot find that Plaintiffs were aware of all of the facts giving rise to these claims by February 2006.

The motion to dismiss Plaintiffs' claims as time-barred is denied.

### F.      Standing

Defendants contend that Millennium lacks standing and should be dismissed as a plaintiff in this action.  The only claims for which Millennium alleged injury are Counts III, V, and VI, all of which have been dismissed as unripe.  Thus Defendants' standing argument is moot.

### G.      Remaining Grounds for Dismissal

Defendants argue that Plaintiffs have failed to adequately allege a breach of fiduciary duty or of the implied covenant of good faith and fair dealing.  These arguments need not be addressed given the resolution of the above issues.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 22) is granted in part and denied in part.  Counts I, II, III, V, VI, and VII are dismissed.  Count VIII is dismissed as to Defendant Fortune Brands.

 

 

**IT IS SO ORDERED** this 6th day of January, 2009.

s/ John W. Lungstrum               
John W. Lungstrum
United States District Judge
