DJW/1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**MILLENNIUM MARKETING**
**GROUP, LTD., et al.,**

                              **Plaintiffs,**                        **Civil Action**

**v.**                                              **No. 08-2198-JWL-DJW**

**SIMONTON BUILDING**
**PRODUCTS, INC., et al.,**

                              **Defendants.**

**MEMORANDUM AND ORDER**

       Pending before the Court is Plaintiffs' Motion to Compel Production of Documents (doc. 54).  Plaintiffs seek an order compelling Defendant Fortune Brands, Inc. ("Fortune Brands") to produce various documents responsive to Plaintiffs' First and Second Requests for Production of Documents.  Fortune Brands served written responses and objections to those requests in December 2008, and indicated in those written responses that it would produce certain documents.  Shortly after Fortune Brands served its written responses but before Fortune Brands produced any of its responsive documents, the Court dismissed a number of Plaintiffs' claims.  Fortune Brands then informed Plaintiffs that it would not produce any documents responsive to Plaintiffs' requests for production because none of those documents was relevant to any of the remaining claims and defenses in the case.

       Plaintiffs now move to compel Fortune Brands to produce the documents that it indicated in its December 2008 written responses that it would produce.  For the reasons set forth below, the Motion to Compel is granted in part and denied in part.

## I.     Introduction and Nature of the Matter Before the Court

### A.     Background Information

This case involves claims for trade secret misappropriation, breach of contract, and unjust enrichment.  It is brought against Simonton Building Products, Inc. ("SBPI") and a related company, Simonton Holdings, Inc. ("Simonton Holdings") (collectively referred to as "Simonton").  The lawsuit is also brought against Fortune Brands, which is the company that acquired SBPI and its parent company SBR, Inc. ("SBR") through a series of mergers that took place in 2006.  SBPI is a vinyl window manufacturer.

### B.     General Allegations of the Complaint

Plaintiffs' Amended Complaint alleges the following:  The individual Plaintiffs Orin Johnson and Gary Jones developed a flash-free thermoplastic welding system for thermoplastic window frames, which they patented in 1999.[1]  The patented inventions are collectively referred to as the "Am-Rad Flash-Free Thermoplastic Welding System."[2]  Johnson and Jones subsequently assigned ownership of the patents to Plaintiff Am-Rad, Inc. ("Am-Rad").[3]  Plaintiff Millennium Marketing Group ("Millennium") was retained to help market the patents.[4]

In 2004, Millennium, acting as marketing agent for Johnson, Jones, and Am-Rad, began discussions with SBPI "for the purpose, among other things, of seeking licensing protection, marketing consultation and/or procurement of venture capital" to promote the Am-Rad Flash-Free

---

[1]First Am. Compl. (doc. 18) ¶¶ 10-12.

[2]*Id.* ¶ 12.

[3]*Id.*

[4]*Id*. ¶ 15.

Thermoplastic Welding System.[5]  On April 8, 2004, Millennium entered into a "Non-Disclosure and Non-Use Agreement ("NDNU Agreement") with SBPI to protect all proprietary and trade secret information exchanged between the parties.  Pursuant to the NDNU Agreement, each party agreed not to use "proprietary information belonging to the other party for its own purposes."[6]  Several months later, SBPI and Plaintiffs entered into a license agreement ("License Agreement") for the license and use of the Am-Rad Flash-Free Thermoplastic Welding System.[7]  Pursuant to the License Agreement, as amended on July 15, 2005, Plaintiffs Johnson, Jones and Am-Rad granted  SBPI an exclusive license "to prove out the Am-Rad Flash-Free Welding Technology, with a subsequent exclusive right to adapt the welding technology into a production process."[8]

The Amended Complaint further alleges that although the License Agreement did not require Plaintiffs "to assist SBPI in its efforts to prove out, develop and adapt the Am-Rad Flash-Free Thermoplastic Welding Technology into a production process," Johnson, Jones, and Am-Rad entered into "a relationship of confidence and trust and fiduciary relationship, as well as an implied agreement and/or an existing joint venture or partnership with SBPI and/or SBR, to assist and jointly work with SBPI and/or SBR to develop and adapt the technology into a production process for the parties' joint ownership and profit."[9]  Plaintiffs assert that throughout the parties' joint development of the technology, "Johnson, Jones and Am-Rad developed and possessed certain confidential and

---

[5]*Id.*

[6]*Id.* ¶ 16.

[7]*Id.* ¶ 17.

[8]*Id.* ¶ 18.

[9]*Id.* ¶ 22.

proprietary information and trade secrets" that were shared with Defendants.[10]  Plaintiffs claim that

instead of using the developed technology for the parties' joint ownership and profit, Defendants

filed new patent applications ("Simonton Patent Applications") to the exclusion of Plaintiffs and

failed to enter into the joint venture as agreed.[11]

Fortune Brands acquired SBPI and SBR in 2006 through a series of mergers ("the

Merger").[12]  Plaintiffs allege that Defendant Simonton Holdings is the successor in interest to SBR

and succeeded to SBR's liability for the acts alleged by Plaintiffs.[13]

With respect to trade secrets and confidential information, the First Amended Complaint

asserts the following general allegations:

> Johnson, Jones and Am-Rad developed and possessed certain confidential and
> proprietary information and trade secrets, including, but not limited to, know-how,
> techniques, methods, processes, test results, knowledge based on experiments and
> tests, and other information relating to and enabling a method of manufacturing a
> thermoplastic fenestration product (window frames) and an apparatus for manufac-
> turing a fenestration product . . . some of which was subsequently developed and/or
> refined through the parties' joint efforts . . . (hereinafter the "Confidential Informa-
> tion and Trade Secrets").[14]

The First Amended Complaint further alleges that in reliance on Defendants' repeated

assurances, Plaintiffs "disclosed their Confidential Information and Trade Secrets . . .  to help and

---

[10]*Id.* ¶¶ 25 & 26.

[11]*Id.* ¶¶ 29, 30 & 33.

[12]*Id.* ¶ 34; Defs.' Answer (doc. 46) ¶ 34.

[13]First Am. Compl. (doc. 18) ¶ 35.

[14]*Id.* ¶ 25.

assist SBPI and/or SBR in the development of the technology."[15]  "The apparatus, processes and technology disclosed and proposed by the Simonton Patent Applications were . . . based upon the Confidential Information and Trade Secrets, as well as the parties' joint efforts made in reliance on . . . the parties' confidential and fiduciary relationship and implied agreement and/or existing joint venture . . . ."[16]

### C.       Count IV — Breach of the NDNU Agreement

In Count IV, which asserts breach of the NDNU Agreement, Plaintiffs allege that SBPI breached the NDNU Agreement by disclosing Plaintiffs' "Confidential Information and Trade Secrets" to third parties, including Fortune Brands, and using that information for its own purposes.[17]

### D.       Count VII — Unjust Enrichment

In support of their unjust enrichment claim, Plaintiffs allege that "[t]hrough their joint efforts and the use of the Confidential and Trade Secret information, SBPI and/or SBR and Plaintiffs were able to successfully develop and adapt Plaintiffs' technology into a production process . . . ."[18] Plaintiffs further allege:

> SBPI and [Simonton Holdings] (as SBR's successor in interest) acknowledged and accepted the benefits conferred by Johnson, Jones and Am-Rad through their Confidential Information and Trade Secrets, as well as their services, consultation and efforts contributed to jointly develop and adapt the technology into a production process for the parties' joint ownership and profit, and then stole the Confidential Information and Trade Secrets and the fruits of the parties' joint efforts, breached their fiduciary duties (among others), secretly filed the Simonton Patent Applications (the apparatus, processes and technology of which were the result of and based upon

---

[15]*Id.* ¶ 26.

[16]*Id.* ¶ 33.

[17]*Id.* ¶ 54.

[18]*Id.* ¶ 79.

the Confidential Information and Trade Secrets and the services, consultation and efforts they rendered), and falsely claimed that the Simonton Patent Applications and the apparatus, processes and technology disclosed and proposed therein were the result of SBPI's and/or SBR's independent, but parallel research and development and belonged to SBPI, alone, and that such apparatus, processes and technology were not the result of or based on the Confidential Information and Trade Secrets, as well as their joint efforts, thereby excluding Johnson, Jones and Am-Rad from the ownership of and profit from such technology, and any enhancements and improvements thereto.[19]

Plaintiffs contend that Defendants were unjustly enriched in the amount of the value of the benefits they conferred on Defendants, including the value of "the Confidential Information and Trade Secrets, their services, consultation and effort to develop and adapt the technology into a production process, the technology itself, as proposed and disclosed in the Simonton Patent Applications."[20]

### E.      Counts IX through XI — Trade Secret Misappropriation

Plaintiffs allege the following with respect to their claimed trade secrets:

Johnson, Jones and Am-Rad developed and possessed certain trade secrets, including, but not limited to, know-how, techniques, methods, processes, test results, knowledge based on experiments and tests, and other information relating to and enabling a method of manufacturing a thermoplastic fenestration product (window frames) and an apparatus for manufacturing a fenestration product . . . . some of which was subsequently developed and/or refined through the parties' joint efforts, as described above.[21]

Plaintiffs further allege that in violation of the Kansas, Minnesota and West Virginia Uniform Trade Secrets Acts, "Defendants misappropriated Johnson's Jones' and Am-Rad's trade

---

[19]*Id.* ¶ 81.

[20]*Id.* ¶ 84.

[21]*Id.* ¶¶ 86, 93 & 98.

secrets by . . . using and/or disclosing such trade secrets without Johnson's, Jones' and Am-Rad's express or implied consent."[22]

### F.     The Discovery at Issue

Plaintiffs served their First Set of Requests for Production of Documents ("First Requests") on Fortune Brands on November 21, 2008.  Fortune Brands served written responses to the First Requests on December 24, 2008.  Plaintiffs served their Second Set of Requests for Production of Documents ("Second Requests") on Fortune Brands on November 26, 2008.  Fortune Brands served written responses to the Second Requests on December 29, 2008.  The First Requests consisted of 83 requests, while the Second Requests consisted of 11 requests.

In its written responses to the First Requests, Fortune Brands asserted a number of general objections to all of the requests, along with various specific objections to certain requests.  However, Fortune Brands indicated that it would, without waiving any of its objections, produce documents responsive to First Requests No. 1-6, 20-28, 30-40, 43, 45-52, 54, 56-59, 66-75, 77 and 79-83.[23] Additionally, in response to First Requests No. 7-19, 29 and 76, Fortune Brands stated that it would produce, without waiving its objections, a certain subset of "relevant" or "relevant, representative non-privileged" documents.  Only in response to First Requests No. 41 and 42 did Fortune Brands stand on its objections and state that it would produce no documents.  In response to First Requests No. 44, 53, 55, 60-65 and 78, Fortune Brands either stated that "no such documents [or things] exist" or that it had no responsive documents in its possession, custody or control.  Thus, Fortune Brands

---

[22]*Id.* ¶¶ 88, 92 & 97.

[23]In some of those responses, Fortune Brands indicated that it would produce "non-privileged documents" or responsive documents "to the extent they exist."

indicated it would produce documents responsive to 71 out of the 83 requests contained in the First Requests.

In its written responses to the Second Requests, Fortune Brands asserted a number of general and specific objections. In response to Second Requests No. 1-6, Fortune Brands indicated that no responsive documents exist. In response to Second Requests No. 7-11, it indicated that it would produce, without waiving its objections, various "non-privileged" or "non-privileged representative" documents. Thus, Fortune Brands represented that it would produce documents responsive to 5 of the 11 requests contained in the Second Requests. Overall, then, Fortune Brands indicated that it would produce documents in response to 76 of the total 94 requests contained in both the First and Second Requests. Fortune Brands did not produce any documents at the time it served its written responses in December 2008.

### G.  Dismissal of Certain Claims

Plaintiffs' Amended Complaint, filed on August 11, 2008, asserted eleven causes of action against one or more of the Defendants, as follows:

| | |
|---|---|
| Count I | Breach of fiduciary duty against SBPI and Simonton Holdings; |
| Count II | Breach of implied covenant of good faith and fair dealing against SBPI and Simonton Holdings; |
| Count III | Breach of the License Agreement against SBPI; |
| Count IV | Breach of the NDNU Agreement against SBPI; |
| Counts V-VI | Tortious interference against Fortune Brands and Simonton Holdings; |
| Count VII | Aiding and abetting breach of fiduciary duty against Fortune Brands and Simonton Holdings; |
| Count VIII | Unjust enrichment against all three Defendants; and |
| Counts IX-XI | Misappropriation of trade secrets against all three Defendants. |

On January 6, 2009, before Fortune Brands had the opportunity to produce any documents responsive to the First or Second Requests, the Court granted Defendants' Motion to Dismiss in part. The Court dismissed Counts I-III (breach of fiduciary duty, breach of implied covenant of good faith

and fair dealing, and breach of the License Agreement), none of which was asserted against Fortune

Brands.[24]  The Court also dismissed Counts V-VII (tortious interference and aiding and abetting)

against Fortune Brands and Simonton Holdings.[25]  The Court ruled that those seven claims were not

ripe for decision in this Court because they were "inextricably linked to the question of whether

[SBPI's] two new patents enhance or improve upon Am-Rad's existing patents," a question that is

before the Patent and Trademark Office ("PTO").[26]  The inventions that are the subject of SBPI's

new patents are referred to as the "Precision Controlled Welding Technology."[27]

    In dismissing the above claims, the Court expressly rejected Plaintiffs' suggestion "that even

claims that rely on the unripe issue should be allowed to proceed through discovery to preserve

evidence until the PTO has issued its determination."[28]  The Court noted that because "ripeness is

a jurisdictional issue," discovery would not be allowed on any of those claims dismissed on ripeness

grounds.[29]

---

[24]Jan. 6, 2009 Mem. and Order (doc. 43) at 8.

[25]*Id.*.

[26]*Id.*

[27]Fortune Brands' Resp. to Mot. to Compel (doc. 62) at 11.

[28]Jan. 6, 2009 Mem. and Order (doc. 43) at 8.

[29]*Id.* (citing *Park Lake Res., LLC v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1135 (10th Cir. 2004) (ripeness is a jurisdictional issue).

The Court also dismissed Count VIII (unjust enrichment) as to Fortune Brands, but not as to SBPI and Simonton Holdings.[30]  The Court declined to dismiss Count IV (breach of the NDNU Agreement) and Counts IX-XI (misappropriation of trade secrets).[31]

As a result of Judge Lungstrum's Order, the only claims remaining against Fortune Brands are Count VIII for unjust enrichment and Counts IX-XI for trade secret misappropriation.[32]

### H.        Fortune Brand's Subsequent Decision to Not Produce Any Documents

At the time the Court entered its January 6, 2009 Order, Fortune Brands had not yet produced any of the documents that it represented in its December 24 and 29, 2008 written responses it would produce.  Shortly after the Court's January 6, 2009 Order was entered, Fortune Brands notified Plaintiffs that it would not be producing *any* documents in response to Plaintiffs' requests because the scope of discovery had changed in light of the Court's Order.  Fortune Brands informed Plaintiffs that its document review had not revealed any documents relevant to the remaining claims. While Fortune Brands recognized that the trade secret misappropriation claims were still filed against it, it questioned whether Plaintiffs's claims were valid because Plaintiffs have allegedly failed to identify any trade secret information that they disclosed to Fortune Brands which Fortune Brands could have misappropriated.

---

[30]*Id*. at 10.

[31]*Id*. at 10-11.

[32]*Id*. at 13.

**II.      Compliance with D. Kan. Rules 37.1(a) and 37.2**

As a threshold matter, the Court must determine whether Plaintiffs, as the moving party, have complied with the requirements of D. Kan. Rules 37.1(a) and 37.2.  Defendants contend that Plaintiffs have failed to comply with both Rules.

D. Kan. Rule 37.1(a) states that any motion brought under Federal Rule of Civil Procedure 37 which is directed at requests for production or other discovery requests "shall be accompanied by copies of . . . the portions of . . . the requests or responses in dispute."[33]  D. Kan. Rule 37.2 provides that the Court will not entertain any motion to resolve a discovery dispute pursuant to Federal Rule of Civil Procedure 37 unless the movant has made a "reasonable effort to confer" with the opposing party.[34]  Furthermore, D. Kan. Rule 37.2 states that the certification required by Rule 37 "shall describe with particularity the steps taken by all counsel to resolve the issues in dispute." In addition, it explains that a "reasonable effort to confer" requires the parties to "converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."[35]

Defendants argue that Plaintiffs have not complied with D. Kan. Rule 37.1(a) because Plaintiffs attach all 94 requests for production to their Motion but fail to identify any specific request as being in dispute.  Defendants assert that Plaintiffs have not made any attempt to revise or narrow the expansive scope of their requests in light of the Court's January 6, 2009 order dismissing many of their claims.

---

[33]D. Kan. Rule 37.1(a).

[34]D. Kan. Rule 37.2.

[35]*Id.*  In a similar vein, Fed. R. Civ. P. 37(a)(1) provides that any motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."

Defendants also argue that Plaintiffs have failed to confer as required by D. Kan. Rule 37.2, asserting that Plaintiffs did not attempt to discuss each of the 94 document requests, or, for that matter, any particular request.  Defendants contend that the parties' discussion revolved around (1) trade secrets, and (2) the merger of Fortune Brands with SBPI and SBR and the circumstances surrounding that merger.

The Court is not persuaded by Fortune Brands' arguments, and finds that Plaintiff have satisfied the requirements of both rules.  Plaintiffs attach to their Motion both the First and Second Requests for Production in their entirety.  Plaintiffs move to compel Fortune Brands to produce those documents that Fortune Brands indicated in its December 24 and 29, 2008 written responses that it would produce.  As Plaintiffs point out, those are documents responsive to First Requests No. 1-40, 43, 45-52, 54, 56-59, 66-77, 79-83 and Second Requests No. 7-10.  (While Fortune Brands also indicated it would produce documents in response to Second Request No. 11, Plaintiffs have chosen not to include that in their Motion to Compel.)  The Court finds no fault in Plaintiffs attaching all 94 requests, even though only 75 are at issue.  The Court therefore holds that Plaintiffs have complied with D. Kan. Rule 37.1(a).

The Court also holds that Plaintiffs have complied with D. Kan. Rule 37.2.  Plaintiffs have included in their opening brief a "Certification of Compliance" which indicates that their counsel had both telephone and e-mail communications with Fortune Brands' counsel  regarding whether the dismissal of some of Plaintiffs' claims affected the scope of discovery requests that could be served upon Fortune Brands.[36]  The e-mails attached to Plaintiffs' opening brief support that

---

[36]*See* Certification of Compliance with Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2 (doc. 55) at 15.

certification.[37]  The Court does not believe it was necessary for counsel to discuss each particular request, when it was clear that the parties' positions were diametrically opposed, with Plaintiffs contending that *all* of the requests are relevant to the remaining claims and defenses, and Defendants contending that *none* of the requests is relevant.

Having determined that Plaintiffs complied with D. Kan. Rules 37.1(a) and 37.2, the Court will now proceed to determine the merits of the parties' dispute.

### III.    The Parties' Arguments

Plaintiffs assert they are entitled to an order compelling Fortune Brands to produce the documents it "agreed" it would produce in its December 24 and 29, 2008 written responses to the First and Second Requests for Production.  Plaintiffs present two primary arguments in support of their motion.  First, Plaintiffs argue that Fortune Brands "already agreed to produce the responsive documents and cannot, after the time for stating objections has expired, attempt to withhold documents it previously agreed to produce."[38]  Secondly, Plaintiffs argue that the documents Fortune Brands "agreed to produce" in its December 2008 responses are relevant to the remaining claims and/or defenses in the case and must therefore be produced.

Fortune Brands, on the other hand, argues that the proper scope of discovery must conform to the remaining claims and defenses in the case and that it has not waived its right to object to the relevancy of these documents.  It argues that once a court dismisses certain claims, as Judge Lungstrum did in this case, relevancy must de determined in light of the specific claims and defenses that remain in the case.  In addition, Fortune Brands points out that Judge Lungstrum expressly rejected Plaintiff's suggestion that they be allowed to conduct discovery on the unripe claims that

---

[37]*See* Exs. F and G, attached to Pls.' Supp. Mem. (doc. 55).

[38]Pls.' Mem. in Supp. of Mot. to Compel (doc. 55) at 1.

were dismissed.  Finally, Fortune Brands argues that none of the documents that it indicated it would produce in its December 2008 responses is relevant to the remaining claims or defenses.  Thus, Fortune Brands asks the Court to deny the Motion to Compel.

**IV.    Did Fortune Brands Waive the Right to Assert Relevancy Objections by Stating in Its December 2008 Written Responses That It Would Produce Documents?**

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant *to any party's claim or defense*."[39]  Thus, the claims and defenses in the case define the scope of permissible discovery.  While it true that this Court typically deems any objections not asserted in a party's initial response to a discovery request to be waived,[40] the Court does not find waiver applicable here, where the Court dismissed a number of the claims from the lawsuit shortly *after* the written responses and objections were served, but before any documents were actually produced.

A common sense reading of Rule 26(b)(1) dictates that relevance must be determined *based on the claims and defenses that are in the case at the time the documents are produced.*  Moreover, courts have repeatedly held that it is proper to deny discovery of information that is relevant only to claims or defenses that have been dismissed or stricken, unless the information sought is otherwise relevant to the remaining claims, defenses or issues in the case.[41]

---

[39]Fed. R. Civ. P. 26(b)(1) (emphasis added).

[40]*See, e.g., Gispon v. Southwestern Bell Tel. Co.,* No. 08-2017-EFM-DJW, 2009 WL 790203, at *6 (D. Kan. Mar. 24, 2009); *Cardenas v. Dorel Juvenile Group, Inc.,* 230 F.R.D. 611, 621 (D. Kan. 2005); *Sonnino v. Univ. of Kan. Hosp. Auth.,* 220 F.R.D. 633, 657 (D. Kan. 2004).

[41]*See, e.g., Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351-52 (1978) ("[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken . . . unless the information sought is otherwise relevant to issues in the case."); *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 402 (6th Cir. 1998); *City of Owensboro, Ky. v. Ky. Util. Co.,* No. 04-CV-87(M), 2007 WL 4239460, at *2 (W.D. Ky Nov. 29, 2007).

When Fortune Brands served its initial responses and objections in December 2008, all eleven counts were still in the case, and its responses and objections were made in light of those eleven counts.  However, within a few weeks of serving those responses and objections, Counts I–III and V-VII were dismissed altogether, and Count VIII was dismissed as to Fortune Brands.  Based on these facts, the Court holds that it was proper for Fortune Brands to withdraw its prior responses and inform Plaintiffs that certain documents would no longer be produced because they were no longer relevant as to the claims remaining in the case.  Moreover, the Court finds that Fortune Brands acted promptly in communicating its position to Plaintiffs on January 15, 2009, only nine days after Judge Lungstrum issued his January 6, 2009 Order dismissing the claims.[42]  While it would have been wise for Fortune Brands to serve written amended or supplemental responses containing their new relevance objections, the Court will not find waiver under such circumstances.  To do so would place form over substance.  This is especially true in light of Judge Lungstrum's ruling that Plaintiffs were not allowed to conduct discovery on the unripe claims, i.e., Counts I-III and V-VII.

Based on the foregoing, the Court rejects Plaintiffs' argument that Fortune Brands waived its relevance objections by not asserting them in its written December 24 and 29, 2008 responses, and holds that Fortune Brands properly asserted its relevancy objections after Judge Lungstrum entered his dismissal Order on January 6, 2009.  The Court will now proceed to decide the merits of Fortune Brands' relevance objections and determine what, if any, documents responsive to the First and Second Requests Fortune Brands must produce.

---

[42]*See* Pls.' Mem. in Supp. of Mot. to Compel at 8 and January 2009 e-mails between counsel in which Fortune Brands clearly states its position regarding the irrelevance of any documents that pertain to the newly dismissed claims.  *See id.*, Ex. F.

**V.      Are the Documents Relevant to Any of the Remaining Claims or Defenses?**

**A.      The Standard for Determining Relevance**

Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[43]   Consequently, a request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[44]

When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[45]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[46]   As noted above, relevance is determined in light of the claims and defenses in the case, and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[47]

---

[43]*Jones v. Wet Seal Retail, Inc.,* 245 F.R.D. 724, 725 (D. Kan. 2007); *Cardenas,* 232 F.R.D. at 382; *Owens,* 221 F.R.D. at 652.

[44]*Jones,* 245 F.R.D. at 725; *Cardenas,* 232 F.R.D. at 382; *Owens*, 221 F.R.D. at 652.

[45]*Cardenas,* 232 F.R.D. at 382; *Owens*, 221 F.R.D. at 652.

[46]*Cardenas,* 232 F.R.D. at 382; *Owens*, 221 F.R.D. at 652.

[47]Fed. R. Civ. P. 26(b)(1).

**B.      Application of the Relevance Standard to the Facts of this Case**

Based on the foregoing, the Court's ruling will focus only on those documents that Fortune Brands indicated in its December 24 and 29, 2008 responses that it would produce, and the Court's inquiry will be limited to determining whether those documents are relevant to any of the *five remaining* claims, i.e., breach of the NDNU Agreement against SBPI (Count IV), unjust enrichment claim against SBPI and Simonton Holdings (Count VIII), and misappropriation of trade secrets against all Defendants (Counts IX - XI).[48]

If the Court determines that this discovery appears relevant on its face, Fortune Brands will have the burden to show how the documents are not relevant or are of such marginal relevance that the potential harm occasioned by the discovery would outweigh the  presumption in favor of their production.  On the other hand, if the documents are not facially relevant, Plaintiffs will have the burden to show relevancy.

Fortune Brands indicated that it would produce documents in response to 76 of the requests for production.  Plaintiff has moved to compel Fortune Brands to produce documents in response to 75 of those requests.  (As noted above, Plaintiffs do not include Second Request No. 11 in their Motion, even though Fortune Brands indicated in its December 29, 2008 written response that it would produce documents in response to that request.)  Consequently, those are the only documents and requests at issue in the Motion to Compel, and the Court must determine whether to uphold Fortune Brands' relevance objections as to each of those 75 requests.

---

[48]The Court's inquiry is limited in this regard because Plaintiffs have moved only to compel Fortune Brands to produce the documents it "agreed" to produce in its December 24 and 29, 2008 responses.  Plaintiffs do not move to compel the production of any other documents nor do they move the Court to overrule any of the objections that Fortune Brands made in its December 2008 responses.  To the extent Plaintiffs make arguments about those other objections, the Court will not address those arguments.

C.    **Analysis**

1.    *First Requests No. 1-6 and 59*

These requests seek correspondence between Fortune Brands and Plaintiff Orin Johnson; Plaintiff Gary Jones; Plaintiff Am-Rad ; Plaintiff (now dismissed) Millennium; Johnson and Jones' former counsel, Paul Sween; and Millennium's former counsel Bruce Mayfield.  Fortune Brands stated in its December 24, 2008 responses to these requests that it would "produce responsive documents to the extent any exist."

The Court finds that this discovery appears relevant on its face with respect to the remaining claims in this lawsuit.  Furthermore, the Court finds that Fortune Brands has not shown how these documents are irrelevant.  Nor does Fortune Brands attempt to demonstrate any potential harm that would result if it is required to produce these documents or how that harm would outweigh the ordinary presumption in favor of their production.[49]  Thus, the Court grants the Motion to Compel as to these requests, and Fortune Brands shall produce all documents responsive to First Requests No. 1-6 and 59 within **twenty (20) days** of this Order.

2.    *First Requests No. 7-19 and 29*

First Requests No. 7-19 and 29 request all correspondence and documents [exchanged] between Fortune Brands and various named individuals "from January 1, 2004 to the present regarding the AM-Rad Flash-Free Technology, the Precision Controlled Welding Technology, Simonton Welding Technologies, the License Agreement, Johnson, Jones, Am-Rad, Millennium, the Simonton Patent Applications, the Merger, and/or any of the litigation between the parties."  In its

---

[49]*See Cardenas,* 232 F.R.D. at 382 (when the discovery sought appears relevant on its face, the party resisting discovery has the burden to show that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure); *Owens,* 221 F.R.D. at 652 (same).

December 24, 2008 written responses to these requests, Fortune Brands asserted various objections, but stated that it would produce "relevant Merger documents that relate to the Am-Rad Flash-Free Technology and the Precision Controlled Welding Technology."  The Court must thus determine whether "Merger documents that relate to the Am-Rad Flash-Free Technology and the Precision Controlled Welding Technology" remain relevant to any of the remaining claims or defenses in this case.

Plaintiffs assert that "[t]hese requests were and are reasonably calculated to lead to the discovery of admissible evidence in light of Plaintiffs' trade secret claims against the Defendants and their claims against Simonton for unjust enrichment and breach of the NDNU Agreement."[50] Plaintiffs maintain that "[s]uch discovery could show, for example, just what these Simonton employees communicated to Fortune Brands about the specified subjects before, during, and after the Merger."[51]  Plaintiffs also state that the individuals named in these requests are all current or former Simonton employees.  In addition, Plaintiffs explain that their unjust enrichment claim is based on the following:

> Plaintiffs claim that when Simonton merged with Fortune Brands, it (Simonton) was unjustly enriched by the information and services Plaintiffs provided to Simonton related to the Am-Rad Flash-Free Technology and the Precision Controlled Welding Technology (which Plaintiffs' jointly developed with Simonton for their joint ownership and profit), by receiving a higher price from Fortune Brands than it would have received without such information and services.[52]

---

[50]Pls.' Reply (doc. 66) at 9.

[51]*Id.*

[52]*Id.* at 6.

Thus, Plaintiffs argue that any documents relating to the Simonton-Fortune Brands merger, including those relating to the Am-Rad Flash-Free Technology and the Precision Controlled Weld Technology, are highly relevant to Plaintiffs' unjust enrichment claim.

The Court will first consider the relevance of "Merger documents that relate to the Am-Rad Flash-Free Technology." As noted above, the term "Am-Rad Flash-Free Technology" refers to the inventions that Johnson and Jones patented in 1999 and later sold to Am-Rad.[53] Fortune Brands argues that inventions described in issued patents do not have trade secret status because the information contained therein is publicly disclosed once the patent is issued. Thus, Fortune Brands argues that any documents that relate to the Am-Rad patents are not relevant to Plaintiffs' trade secret misappropriation claims. In a similar vein, Fortune Brands also argues that these documents are not relevant to Plaintiffs' claim for breach of the NDNU Agreement, because that claim is based on allegations that SBPI disclosed *confidential information and trade secrets* to third parties and used them for SBPI's own purposes. It also argues that the same is true with respect to Plaintiffs' unjust enrichment claim, which is based on SBPI and Simonton Holdings' alleged acceptance and misuse of Plaintiffs' *confidential information and trade secrets*. Fortune Brands reasons that if the Am-Rad Flash-Free Technology is no longer confidential or a trade secret (because it is the subject of the two issued patents), then Merger documents relating to that technology are no longer relevant to the breach of the NDNU Agreement or unjust enrichment claims.

The Court agrees with Fortune Brands that information contained within a patent is considered public information, and can no longer be deemed a trade secret subject to protection.[54]

---

[53]*See* First Am. Compl. (doc. 18) ¶¶ 10-12.

[54]*See BondPro Corp. v. Siemens Power Generation*, Inc.,463 F.3d 702, 706 (7th Cir. 2006)
(continued...)

That principle, however, does not necessarily render these documents irrelevant.  Fortune Brands indicated it would produce documents "relating" to the Am-Rad Flash-Free Technology.  It is possible that such documents could still contain confidential information that was not specifically disclosed in the patents.  Thus, it is conceivable that the documents could be relevant to Plaintiffs' trade secret misappropriation claims.  Moreover, the Court finds persuasive Plaintiffs' argument that the  documents relating to the Am-Rad Flash-Free Technology could be relevant to their unjust enrichment claim.  Given the liberal scope of relevance at the discovery stage, the Court holds that "Merger documents that relate to the Am-Rad Flash-Free Technology" should be produced.

The Court will now consider the relevance of "Merger documents that relate to the Precision Controlled Welding Technology."  As stated above, the phrase "Precision Controlled Welding Technology" refers to  the inventions that are the subject of the Simonton Patent Applications.[55] Plaintiffs allege in their Amended Complaint that the Simonton Patent Applications "disclose and propose claims that are enhancements of or improvements" to the Am-Rad Flash-Free Technology and that the Simonton Patent Applications violate the terms of the License Agreement.[56]  Plaintiffs further allege that the technology disclosed and proposed by the Simonton Patent Applications was

---

[54](...continued)
("Publication in a patent destroys the trade secret . . . ."); *On-Line Tech., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1141 (Fed Cir. 2004) ("After a patent has issued, the information contained within it is ordinarily regarded as public and not subject to protection as a trade secret.").

[55]*See* Fortune Brands' Resp. to Mot. to Compel (doc. 62) at 11.

[56]Am. Compl. (doc. 18) ¶ 32.

based on Plaintiffs' confidential information and trade secrets as well as the parties' joint venture to develop technology for the parties' joint ownership."[57]

Fortune Brands contends that "Merger documents that relate to the Precision Controlled Welding Technology" are not relevant because they pertain only to the unripe claims in Counts I-III (breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, and breach of the License Agreement), and V-VII (tortious interference and aiding and abetting), all of which the Court dismissed. As Judge Lungstrum held, those claims are not ripe because they are "inextricably linked to the question of whether Simonton's two new patents enhance or improve upon Am-Rad's existing patents," a question that is before the PTO.[58]

The Court finds Fortune Brands' argument persuasive. Moreover, Plaintiffs fail to explain how these documents are relevant to the remaining claims. The Court therefore denies the Motion to Compel with respect to "Merger documents that relate to the Precision Controlled Welding Technology."

3.      *First Requests No. 20-28 and 30-32*

First Requests No. 20-28 seek correspondence and documents relating to the research, development, production, or use of the Am-Rad Flash-Free Technology, Precision Controlled Welding Technology, and "any other Simonton Welding Technologies involving radiant heat." First Requests No. 30-32 seek all correspondence and documents between Fortune Brands and Simonton from January 1, 2004 to the present regarding the Am-Rad Flash-Free Technology, Precision Controlled Welding Technology or "any other Simonton Welding Technology involving radiant

---

[57]*Id.* ¶ 33.

[58]Mem. and Order (doc. 43) at 8.

heat."  In its December 24, 2008 responses to these requests, Fortune Brands stated that it would produce "non-privileged responsive documents to the extent any exist."

Plaintiffs' only specific reference to these requests is found in their reply brief, where they make the conclusory assertion that "[s]uch requests are clearly reasonably calculated to lead to the discovery of admissible evidence regarding the claims or defenses of any party considering that Plaintiffs have trade secret claims pending against both Simonton and Fortune Brands, as well as a claim for breach of the NDNU agreement and unjust enrichment against Simonton."[59]

The Court cannot say that these requests seek documents that are relevant on their face. Furthermore, the Court does not find Plaintiffs' conclusory explanation sufficient to meet their burden of showing how they are relevant.  The Court therefore denies the Motion to Compel as to these requests.

4.      *First Requests No. 33-37*

First Requests No. 33-37 seek all correspondence, agreements, and documents between (1) Fortune Brands, and (2) certain companies and their employees, officers, directors, attorneys, subsidiaries or independent contractors, from 2004 to the present, which relate to the Am-Rad Flash-Free Technology, Precision Controlled Welding Technology "or any other Simonton Welding Technologies involving radiant heat."   The companies listed are U-R-B-A-N GmbH & Co. Maschinenbau KG; Great Lakes Window, Inc.; GLW, Inc.; ThermaTru Corporation; Sashlite, LLC; and Willi Sturtz Maschinenbau GMbH.   In its December 24, 2008 responses, Fortune Brands stated that it would produce "relevant, representative, non-privileged responsive documents to the extent any exist" or "non-privileged responsive documents to the extent any exist."

---

[59]Pls.' Reply (doc. 66) at 3.

The parties do not discuss the relevancy of these particular requests in their briefing.  The Court finds that the relevance of these documents is not apparent from the face of the requests. Because Plaintiffs do not discuss these requests, the Court finds that Plaintiffs have not met their burden to show their relevancy.  The Motion to Compel is therefore denied as to these requests.

     5.  *First Requests No. 38-40*

First Requests No. 38-40 seek all contracts and agreements entered into between Fortune Brands and Simonton regarding the AM-Rad Flash-Free Technology, Precision Controlled Welding Technology, or any other Simonton Welding Technologies for the period 2004 to the present. Fortune Brands indicated in its December 24, 2008 responses that it would produce "non-privileged responsive documents to the extent any exist."

None of the parties discuss the relevancy of these requests in their briefing.  For the same reason discussed above with respect to First Requests No. 33-37 the Court denies the Motion to Compel as to these requests.

     6.  *First Request No. 43*

This request seeks "all correspondence, documents, disclosures and/or filings of any kind made to the United States Securities and Exchange Commission" regarding the Merger or acquisition of any Simonton entity.  Defendant stated in its December 24, 2008 response that it would produce "non-privileged responsive documents to the extent any exist."

None of the parties discuss the relevancy of this request in their briefing.  For the same reason discussed above with respect to First Requests No. 33-37, the Court denies the Motion to Compel as to this request.

       7.     *First Requests No. 45-48*

First Requests 45 and 46 seek all installation, operation, repair and service logs and manuals pertaining to the Am-Rad Flash-Free Technology, the Precision-Controlled Welding Technology and any Simonton Welding Technologies involving radiant heat, for all production lines at Simonton. Fortune Brands indicated in its December 24, 2008 responses that it would produce "non-privileged representative responsive documents to the extent any exist."

First Requests No. 47 and 48 seek "all correspondence, spreadsheets, and documents regarding costing information, cost savings analysis, and/or any other financial analysis" relating to the Am-Rad Flash-Free Technology and precision Controlled Welding Technology. Fortune Brands stated in its December 24, 2008 responses that it would produce "non-privileged responsive documents to the extent any exist."

None of the parties discuss the relevancy of these requests in their briefing. For the same reason discussed above with respect to First Requests No. 33-37, the Court denies the Motion to Compel as to these requests.

       8.     *First Requests No. 49 and 52*

First Request No. 49 seeks all correspondence, spreadsheets and documents regarding "costing information, cost savings analysis, and/or any other financial analysis relating in any way to the License Agreement." First Request No. 52 seeks all "business plans, strategic plans, projections, budgets, and/or annual forecasts for or regarding the License Agreement and any correspondence and documents related thereto." Fortune Brands stated in its December 24, 2008 responses to these requests that it would "produce non-privileged responsive documents to the extent any exist."

Fortune Brands contends that these documents are no longer relevant because Judge Lungstrum dismissed Plaintiffs' claim for breach of the License Agreement. Plaintiffs, however, contend that discovery relating to the License Agreement and the parties' performance under that agreement is still relevant because that information pertains to one of Defendants' affirmative defenses. In their joint Answer, Defendants asserted a "Third Defense" in which Defendants state that Plaintiffs' unjust enrichment claim is barred by various valid written contracts between the parties, including the NDNU and License Agreements.[60] Defendant's Third Defense states that (1) the written contracts governed the disclosure of confidential information between the parties and how it was to be used by the parties; and (2) any assistance or confidential information that Plaintiffs provided Defendants, which Plaintiffs claim benefitted and unjustly enriched Simonton, was provided pursuant to the terms of those agreements.[61] The Third Defense asserts that the unjust enrichment claim is barred by the existence of the express written contracts.[62]

Plaintiffs argue in their Motion to Compel that "a central issue in this case will be what services, information, trade secrets and technology [were] provided and developed under the License Agreement, on the one hand, versus what services, information, trade secrets and technology [were] provided and developed under the parties' separate agreement, on the other."[63] Plaintiffs maintain that they "are clearly entitled to discovery from Fortune Brands relating to the License Agreement,

---

[60]*See* Defs.' Answer (doc. 46), Third Defense.

[61]*Id*., Third Defense, ¶¶ 10-16.

[62]*Id*., ¶ 16.

[63]Pls.' Reply (doc. 66) at 10.

as such discovery might lead to admissible evidence to, among other things, combat Defendants' affirmative defense based on the License Agreement."[64]

Fortune Brands, on the other hand, argues that to be deemed relevant, documents relating to the License Agreement and Defendants' Third Defense must pertain to "Plaintiffs' assertion that Plaintiffs performed 'additional services' at Simonton's request and for Simonton's benefit that Plaintiffs were not required to do under the terms of the License Agreement."[65]   Fortune Brands argues that none of the requested documents relate to the services that Plaintiffs claim they performed outside of the License Agreement, and, thus, the documents are not relevant.

The Court finds that the particular documents requested relating to the License Agreement in these requests, i.e., cost savings analyses, business and strategic plans, projections, budgets, and annual forecasts, are not relevant to Defendants' Third Defense or the unjust enrichment claim. Judge Lungstrum explained in his January 6, 2009 Memorandum and Order that Kansas law forbids unjust enrichment claims "when a written contract governs the issue."[66]   Judge Lungstrum construed Plaintiffs' unjust enrichment claim as one "based on contact not governed by the express agreements," and Plaintiffs conceded in their opposition to the Motion to Dismiss that they are seeking recovery for only those benefits they conferred to Simonton *outside* of the parties' express agreements.[67]   This is consistent with Defendant's Third Defense.

---

[64]*Id*. at 10-11.

[65]Fortune Brands' Resp. to Mot. to Compel (doc. 62) at 14.

[66]*See* Mem. and Order (doc. 43) at 9 (citing *Fusion v. Neb. Aluminum Castings, Inc*., 934 F. Supp. 1270, 1275 (D. Kan. 1996); *Whan v. Smith,* 130 Kan. 9, 285 P. 589, 591 (1930)).

[67]*Id.*

The Court agrees with Fortune Brands that to be considered relevant to the unjust enrichment claim, discovery relating to the License Agreement must relate to what benefits (including confidential information, trade secrets and technology) and services were provided to Simonton *outside of the License Agreement*. The requests at issue, however, pertain to far different topics: cost savings analyses, business and strategic plans, projections, budgets, and annual forecasts pertaining to the License Agreement. They do not relate to the scope of the License Agreement nor do they pertain to any benefits or services that may have been provided outside of the License Agreement. Merely because the requested documents relate in some way to the License Agreement does not render them relevant.

In sum, the Court finds that Plaintiffs have failed to show how these documents are relevant to any of the claims or defenses remaining in the case. The Court therefore denies the Motion to Compel as to First Requests No. 49 and 52.

## 9.     *First Requests No. 50 and 51*

First Requests No. 50 and 51 seek all business and strategic plans, projections, budgets, and annual forecasts regarding the Am-Rad Flash-Free Technology and the Precision-Controlled Welding Technology. Fortune Brands' December 24, 2008 responses indicated that it would produce "non-privileged responsive documents to the extent any exist."

Neither side discusses these requests. The Court finds that the relevance of this discovery is not apparent on its face and that Plaintiffs have not shown how the documents are relevant to any of the remaining claims or defenses. Thus, the Court denies the Motion to Compel as to First Requests No. 50 and 51.

10.     *First Requests No. 54 and 56-58*

First Request No. 54 seeks "all roll out plans and schedules to roll out the Precision Controlled Welding Technology on any of Simonton's production lines" and any related correspondence and documents.  First Request No. 56 seeks all quality control charts and any documents relating to quality control for the Precision Controlled Welding Technology.  First Requests No. 57 and 58 seek all reports, studies and surveys regarding the Precision Controlled Welding Technology and Am-Rad Flash-Free Technology, along with any related correspondence. Fortune Brands stated in its December 24, 2008 responses that it would "produce responsive documents to the extent any exist."

Neither side discusses these requests.  The Court finds that the relevance of this discovery is not apparent on its face and that Plaintiffs have not shown how the documents are relevant to any of the remaining claims or defenses.  Thus, the Court denies the Motion to Compel as to First Requests No. 54 and 56-58.

11.     *First Requests No. 66-69 and 73*

These requests pertain to the 2006 Merger, in which Fortune Brands acquired SBPI and its parent company SBR.  First Request No. 66 seeks "all documents exchanged with or given to any Simonton entity relating to or during the course of the Merger" regarding the Am-Rad Flash-Free Technology.  First Request No. 67 asks for the same types of documents regarding the Precision Controlled Welding Technology.  Fortune Brands stated in its December 24, 2008 responses that it would "produce non-privileged responsive documents to the extent any exist."

The Court finds that these documents would be almost identical to the "Merger documents that relate to the AM-Rad Flash-Free Technology" and "the Merger documents that relate to the Precision Controlled Welding Technology," which are the subject of First Requests No. 17-19 and

29.  For the same reasons discussed above in connection with those requests, the Court finds that the documents requested in First Request No. 66 are relevant to the remaining claims, while those sought in First Request No. 67 are not relevant.  The Motion to Compel is therefore granted as to First Request No. 66 and denied as to First Request No. 67.  Within **twenty (20) days** of the date of this Order, Fortune Brands shall produce all non-privileged documents responsive to First Request No. 66

First Request No. 68 seeks all "internal documents . . . documenting the legal due diligence undertaken by you as a part of the Merger with regard to the Am-Rad Flash-Free Technology, Precision Controlled Welding Technology, and/or other intellectual property relating to any other Simonton Welding Technologies."  In its December 24, 2008 response, Fortune Brands objected on the basis of attorney-client privilege and work product, but indicated it would produce "non-privileged responsive documents to the extent any exist."

Plaintiffs assert that they are not seeking any attorney-client privileged or work product documents, and, to the extent Fortune Brands has any privileged documents responsive to this request, it may provide a privilege log.  Further, Plaintiffs contend that the non-privileged documents sought are relevant to their remaining unjust enrichment claim.  They explain that SBPI stated in its interrogatory responses that all due diligence review regarding the Merger was conducted by Fortune Brands, and that SBPI's employees provided documents to Fortune Brands in connection with that due diligence review.[68]  Plaintiffs contend that the requested documents may show that Fortune Brands paid a higher price for Simonton because of the services and information Plaintiffs provided to Simonton relating to the AM-Rad Flash-Free Technology and the Precision Controlled Welding Technology.

---

[68]*See* SBPI's Resp. to Interrogs. No. 10-12, attached as Ex. H to Pls.' Reply (doc. 66).

The Court finds that Plaintiffs have made at least a plausible argument that the requested documents with regard to the AM-Rad Flash-Free Technology have the potential to be relevant to Plaintiff's unjust enrichment claim.  Although the relevance appears fairly tenuous, the Court finds that the documents may have "a possible bearing" on the unjust enrichment claim.  The Court therefore grants the Motion to Compel as to "internal documents . . . documenting the legal due diligence undertaken by [Fortune Brands] as a part of the Merger with regard to the Am-Rad Flash-Free Technology."  Within **twenty (20) days** of the date of this Order, Fortune Brands shall produce all responsive non-privileged documents with regard to the Am-Rad Flash-Free Technology and a privilege log for any responsive documents withheld on the basis of privilege or work product.

The Court fails to see how due diligence documents relating to the Precision Controlled Welding Technology would be relevant.  For reasons similar to those stated above with respect to First Requests No. 7-19 and 29 and the Precision Controlled Welding Technology, the Court denies the Motion to Compel as to due diligence documents relating to the Precision Controlled Welding Technology.

In addition, the Court finds that Plaintiffs have failed to show how due diligence documents concerning "other intellectual property relating to any other Simonton Welding Technologies" are relevant to any of the remaining claims or defenses.  The Court therefore denies the Motion to Compel as to those documents.

First Request No. 69 seeks all documents relating "to any and all intellectual property identified in the previous Request [First Request No. 68] that was considered and/or included in the Merger including . . . documents evidencing the value given to each piece of intellectual property."  Fortune Brands objected to producing attorney-client privileged or work product documents but indicated it would produce "non-privileged responsive documents to the extent any exist."

Plaintiffs contend that these documents are relevant with respect to Plaintiffs' unjust enrichment damages. Plaintiffs allege that Simonton was unjustly enriched by the services and information related to the Am-Rad Flash-Free Technology and the Precision Controlled Welding Technology which Plaintiffs provided to Fortune Brands. Plaintiffs further allege that Fortune Brands paid Simonton a higher price because of those services and information. Thus, Plaintiffs argue that these documents are relevant to determining the amount of Simonton's unjust enrichment.

For the same reasons discussed above with respect to First Request No. 68, the Court grants the Motion to Compel to the extent this request seeks documents relating to the Am-Rad Flash-Free Technology, but denies it to the extent it seeks documents relating to any other intellectual property. Fortune Brands shall produce all responsive non-privileged documents with regard to the Am-Rad Flash-Free Technology and any necessary privilege log within **twenty (20) days** of the date of this Order.

First Request No. 73 seeks "the Stock Purchase Agreement and all documents related to or "executed as a part of the closing of the Merger." Plaintiffs contend that the Stock Purchase Agreement and Merger closing documents will help them determine the amount of Simonton's unjust enrichment. The Court finds that the relevancy of this discovery is not apparent on its face and finds that Plaintiffs' conclusory explanation is not sufficient to show how it is relevant. The Court therefore denies the Motion to Compel as to First Request No. 73.

### 12.    First Requests No. 70-72

These requests seek all agreements in effect from 2002 to the present between Fortune Brands, and certain individuals. They also seek the personnel files of certain Fortune Brands employees and any documents relating to the termination or resignation of those employees. Fortune

Brands responded that it would "produce non-privileged responsive documents to the extent any exist."

Neither side discusses these requests in their briefing. The Court finds that the relevance of this discovery is not apparent on its face and that Plaintiffs have not shown how the documents are relevant to any of the remaining claims or defenses. The Court therefore denies the Motion to Compel as to First Requests No. 70-72.

### 13. *First Requests No. 74-76 and 79-80*

Plaintiffs do not specifically discuss or address these requests in their briefing. The relevance of this discovery is not facially apparent, and Plaintiffs fail to show how the documents are relevant to the remaining claims or defenses. The Court therefore holds that Plaintiffs have failed to meet their burden to show how these documents are relevant. The Motion to Compel is therefore denied as to these requests.

### 14. *First Request No. 77*

First Request No. 77 seeks all "correspondence and documents between [Fortune Brands] and any testifying consultant or expert, including the information required by the Court's Scheduling Order." Fortune Brands indicated in its December 24, 2008 response that it would produce "non-privileged responsive documents to the extent any exist."

The Court finds this request to be relevant on its face — at least when it is limited to the claims and defenses that remain in the case following Judge Lungstrum's January 8, 2009 Order. Fortune Brands fails to show how these documents are not relevant. Thus, the Court grants the Motion to Compel with respect to this request. Within **twenty (20) days** of the date of this Order, Fortune Brands shall produce all non-privileged responsive documents to the extent they relate to the claims or defenses remaining in the case. To the extent Fortune Brands withholds any responsive

documents on the basis of privilege or work product immunity, it shall provide a privilege log by that same date.

         15.    *First Request No. 81*

First Request No. 81 seeks all "documents, correspondence, and things that are encompassed in, or were intended to be included in, the categories of documents and things identified in your initial disclosures." In its December 24, 2008 response, Fortune Brands stated that it would "produce non-privileged responsive documents to the extent any exist."

The Court finds First Request No. 81 to be relevant on its face. Rule 26(a)(1)(A)(ii), which governs initial disclosures, places an affirmative duty on litigants to provide "a copy — or a description of category and location — of all documents . . . and tangible things that the disclosing party has in its possession, custody, or control and *may use to support its claims or defenses.*"[69] Thus, the request seeks documents that Fortune Brands may use to support its claims or defenses. As such, any responsive documents would be directly relevant to "any party's claim or defense" and would clearly fall within the scope of discovery allowed by Rule 26(b)(1). Accordingly, the Court grants the Motion to Compel as to this request. Fortune Brands is directed to produce copies of all nonprivileged documents and things that (1) were encompassed by, or included in, the categories which Fortune Brands identified in its initial disclosures, and (2) which Fortune Brands may use to support any claims or defenses remaining in the case after Judge Lungstrum's January 6, 2009 Order. To the extent Fortune Brands withholds any responsive documents on the basis of privilege or work product immunity, it shall provide a privilege log within that same time frame.

---

[69]Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added).

16.      *First Request No. 82*

First Request No. 82 seeks all documents that support any of Fortune Brands' "claimed (or soon to be claimed) damages." In its December 24, 2008 response, Fortune Brands stated that it would "produce non-privileged responsive documents to the extent any exist."

The parties do not discuss this request in their briefing; however, it appears relevant on its face. While the Court is not aware that Fortune Brands is claiming any damages in this lawsuit, the Court will grant the Motion to Compel. To the extent that Fortune Brands is claiming damages, it shall produce all non-responsive documents and provide any required privilege log within **twenty (20 days)** of the date of this Order.

17.      *First Request No. 83*

This request seeks all correspondence and documents relating to "the retrofitting of any machines or welders from radiant heat technologies back to any other welding technology." The parties do not discuss this request in their briefing. The Court finds that the relevance of this discovery is not apparent on its face and that Plaintiffs have not shown how it relevant to any of the remaining claims or defenses. The Court therefore denies the Motion as to First Request No. 83.

18.      *Second Requests No. 7-10*

Second Requests No. 7-10 seek various documents relating to the 2005-2008 sales of windows made using the Precision Controlled Welding Technology, including invoices, bills of sale, shipping information, and accounting information. In its December 29, 2008 responses, Fortune Brands stated that it would produce only "non-privileged representative responsive documents from which the number of windows made using the Precision Control Welding Technology [for each year requested] can be determined."

35

As discussed above, documents relating to the Precision Control Welding Technology pertain to the unripe dismissed claim for breach of the License Agreement.  The documents appear to have no relevancy to the remaining claims, and Plaintiffs do not even attempt to explain how these particular documents are relevant to any remaining claims or defenses. The Court therefore denies the Motion to Compel as to Second Requests No. 7-10.

## VI.   Expenses and Fees Incurred in Connection with this Motion

Plaintiffs do not request that they be reimbursed for the expenses or attorney's fees they have incurred in connection with the filing of their Motion to Compel.  The Court must nevertheless consider whether to make such an award.

Federal Rule of Civil Procedure 37(a)(5) governs the award of fees and expenses in connection with motions to compel.  Generally speaking, it requires the Court to award reasonable expenses and attorney's fees to a prevailing party unless the position of the non-prevailing party was substantially justified or other circumstances make an award of expenses unjust.[70]  If a motion to compel is granted in part and denied in part, the court may apportion the reasonable expenses for the motion.[71]  Courts have generally held that a party's position (i.e., motion, request, response, or objection) is "substantially justified" within the meaning of Rule 37 if it is "justified to a degree that could satisfy a reasonable person,"[72] or where "reasonable people could differ as to the appropriate-

---

[70]*Gipson v. Southwestern Bell Tel. Co.*, No. 08-2017-EFM-DJW, 2009 WL 790203, at *19 (D. Kan. Mar. 24, 2009) (citing Fed. R. Civ. P. 37(a)(5)(A) & (B)).

[71]*Id.* (citing Fed. R. Civ. P. 37(a)(5)(C)).

[72]*See, e.g., Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1, 12 (1st Cir. 2005); *Gipson v. Southwestern Bell Tel. Co.,* No. 08-2017-EFM-DJW, 2009 WL 790203, at *19 (D. Kan. Mar. 34, 2009); *Cardenas v. Dorel Juvenile Group, Inc.,* No. 04-2478-KHV-DJW, 2005 WL 3503625, at *2 (D. Kan. Dec. 22, 2005).

ness" of the objection or response.[73]  Whether to impose sanctions when a court grants in part and denies in part a motion to compel, lies within the court's sound discretion, and the court must consider on a case-by-case basis whether the party's position was substantially justified or whether other circumstances make the imposition of sanctions inappropriate.[74]

The Court finds that many of Fortune Brands' relevance objections and a significant portion of its response to the Motion to Compel were substantially justified.  The Court therefore holds that it would be inappropriate to assess expenses or fees against Fortune Brands.  Accordingly, each party shall pay his/its own expenses and fees incurred in connection with Plaintiffs' Motion to Compel.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Production of Documents (doc. 54) is granted in part and denied in part, as set forth herein.

**IT IS FURTHER ORDERED** that all documents required to be produced as a result of this Order shall be produced, and any privilege log shall be provided, within **twenty (20) days** of the date of this Order.

**IT IS FURTHER ORDERED** that each party shall bear his/its own expenses and attorney's fees incurred in connection with this Motion to Compel.

---

[73]*Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir.1997); *Gipson*, 2009 WL 790203 at *19; *ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2008 WL 833509, at * 1 (D. Kan. Mar. 27, 2008).  In a similar context, the Supreme Court has said that "substantially justified" does not mean "justified to a high degree," but only "justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (construing government's obligations under Equal Access to Justice Act).

[74]*Gispon*, 2009 WL 790203, at *19; *Moss v. Blue Cross and Blue Shield of Kan.*, Inc., 241 F.R.D. 683, 699 (D. Kan. 2007) (citations omitted).

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 4th day of August 2009.


                                        s/David J. Waxse
                                        David J. Waxse
                                        U.S. Magistrate Judge

cc:     All counsel and *pro se* parties