IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ORIN S. JOHNSON, et al.,**

                **Plaintiffs,**        Civil Action

v.                                              No. 08-2198-CM-DJW

**SIMONTON BUILDING
PRODUCTS, INC., et al.,**

                **Defendants.**

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiffs' Motion to Stay (doc. 136). Plaintiffs seek to stay the case until March 1, 2011, at which time Plaintiffs believe the U. S. Patent and Trademark Office will have ruled on Defendant Simonton Building Products, Inc.'s U. S Patent Application No. 11/232,563. For the reasons set forth below, the Court denies the motion.

**I.    Introduction and Nature of the Matter Before the Court**

This is a trade secret misappropriation and breach of contract case brought against Simonton Building Products, Inc. ("Simonton"), a vinyl window manufacturer, and related companies, Simonton Holdings, Inc. and Fortune Brands, Inc.

The case concerns a flash-free welding technique for joining pieces of thermoplastic window frames ("Flash-Free Welding Technology"). Plaintiffs Orin S. Johnson and Gary A. Jones developed and patented the Flash-Free Welding Technology. Johnson and Jones assigned ownership of the patents to Plaintiff Am-Rad, Inc. ("Am-Rad") (the patents hereinafter referred to as "the Am-Rad Patents"). Plaintiffs subsequently entered into a License Agreement with Simonton that allowed Simonton to use the patented Flash-Free Welding Technology in the fenestration industry.

The License Agreement also established a future joint venture between the parties to market Plaintiffs' Flash-Free Welding Technology exclusively to third-parties in the fenestration industry. The License Agreement allowed Simonton to use the Am-Rad Patents to develop new joining techniques so long as the new techniques did not infringe on the Am-Rad Patents. The License Agreement required Simonton to contribute to the joint venture any enhancements or additional patents that Simonton acquired as the result of placing into production products utilizing the Flash-Free Welding Technology which incorporated the claims of the Am-Rad Patents and improvements thereto.

In December 2005, Simonton filed Patent Application No. 11/232,563 ("the '563 Application") describing a new joining technology. In December 2006, Simonton filed a second Patent Application, No. 11/640,456) ("the '456 Application") (collectively the "Simonton Patent Applications"). Neither of the Simonton Patent Applications names Johnson or Jones as inventors. The Simonton Patent Applications remain pending before the U. S. Patent and Trademark Office ("PTO").

Plaintiffs filed this action on April 30, 2008. Their First Amended Complaint, filed on August 11, 2008, alleged that the Simonton Patent Applications disclose and propose claims that are enhancements of, or improvements to, the patents that Plaintiffs licensed to Simonton.[1] Plaintiffs allege that Simonton should have contributed the Simonton Patent Applications to the parties' joint venture, and that by refusing to do so, Simonton violated the terms of the License Agreement.[2]

---

[1] Pls.' First Am. Compl. (doc. 18) ¶ 32.

[2] *Id.* ¶ 32 & 51.

Plaintiffs' First Amended Complaint asserted eleven causes of action against one or more of the Defendants, as follows:

| | |
|---|---|
| Count I | Breach of fiduciary duty; |
| Count II | Breach of implied covenant of good faith and fair dealing; |
| Count III | Breach of the License Agreement; |
| Count IV | Breach of a Non-Disclosure and Non-Use Agreement; |
| Counts V-VI | Tortious interference with contracts and business expectancy; |
| Count VII | Aiding and abetting breach of fiduciary duty; |
| Count VIII | Unjust Enrichment; and |
| Counts IX-XI | Misappropriation of trade secrets in violation of various state Trade Secret Acts. |

On January 6, 2009, the District Judge[3] granted Defendants' Motion to Dismiss in part, and dismissed without prejudice Counts I-III (breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, and breach of the License Agreement).[4] The District Judge also dismissed without prejudice Counts V-VII (tortious interference and aiding and abetting). Judge Lungstrum dismissed these claims on the basis that they are not ripe for decision as they are "inextricably linked to the question of whether Simonton's two new patents enhance or improve upon Am-Rad's existing patents,"[5] a question that was pending before the PTO at the time of Judge Lungstrum's ruling,[6] and which remains pending at this time.

---

[3] The case was originally assigned to the Hon. John W. Lungstrum, and Judge Lungstrum ruled on the Motion to Dismiss. On September 3, 2010, the case was reassigned to the Hon. Carlos Murguia.

[4] Jan. 6, 2009 Mem. and Order (doc. 43) at 8.

[5] *Id.* at 8.

[6] *Id.*

Following the entry of the Court's January 6, 2009 Order dismissing these claims, the parties proceeded to conduct discovery on the remaining claims. Fact discovery closed on December 31, 2009.[7] On January 15, 2010, the parties filed an ADR Report indicating that the case had settled, and the case was administratively closed that same day. On April 29, 2010, however, the parties filed a joint motion to reopen the case after the parties were unable to finalize their settlement. The case was reopened on April 30, 2010.

A new Scheduling Order was entered on June 9, 2010.[8] That Scheduling Oder, which remains in place today, set an August 27, 2010 deadline for completing expert discovery. It scheduled the Pretrial Conference for September 22, 2010 and set a September 15, 2010 deadline for the parties to submit their joint proposed Pretrial Order. The dispositive motion deadline is September 30, 2010. A jury trial is set for March 1, 2011.

## II. Summary of the Parties' Arguments

Plaintiffs move to stay the case until March 1, 2011. Plaintiffs contend that "recent actions taken by the PTO with respect to the '563 Application have made the issuance of a patent on the '563 Application a relative certainty within eight months."[9] That eight-month period would end by February 28, 2011.

Plaintiffs explain that in an Office Action dated March 22, 2010, "the patent examiner propounded a non-final rejection of the '563 Application, noting that a provisional non-statutory

---

[7]*See* September 2, 2009 Scheduling Order (doc. 101), ¶ 2.b.

[8]*See* June 9, 2010 Scheduling Order (doc. 135).

[9]Pls.' Mot. to Stay (doc. 136) at 3.

4

double patenting rejection was the only ground for rejection."[10] They further state that Simonton is required to respond to the March 22, 2010 Office action by September 22, 2010.[11]

Relying on the affidavit of their attorney, Gerald Kraai, Plaintiffs further explain that "[t]he provisional non-statutory double patenting rejection issued on March 22, 2010 with respect to the '563 Application is a non-substantive rejection that can easily be cured, similar to curing a procedural matter."[12] They further state:

> If Simonton wanted to get a patent granted on the '563 Application, Simonton would simply cancel or amend the corresponding claims in the later filed '456 Application and make the examiner aware of it in the '563 Application. Alternatively, Simonton could file a terminal disclaimer with respect to the duplicating claims in the '456 Application under 37 C.F.R. §1.321(c) and make the examiner aware of it in the '563 Application. A terminal disclaimer signifies that if a patent is eventually issued on the '456 Application, the subject matter of those claims in the '456 Application that are identical or non-patentably distinct from the claims in the '563 Application would expire at the same time as the claims that eventually result from a patent on the '563 Application.[13]

Plaintiffs then conclude that "[b]oth of these courses of action will cure the examiner's rejection on the '563 Application in its entirety, and a patent will issue on that application within approximately eight months, or by February 28, 2011."[14] When the patent does issue on the '563 Application, Plaintiffs contend that their contract and tort claims (Counts I-III and V-VII), which were dismissed by Judge Lungstrum on January 6, 2009), will become ripe. Thus, according to Plaintiffs, staying the case until March 1, 2011 would permit Plaintiffs to pursue all of their claims

---

[10]*Id.* at 4.

[11]*Id*. at 5.

[12]*Id*. (citing Kraai Aff., ¶ 12-21).

[13]*Id*. at 5-6 (citing Kraai Aff., ¶ 12-21).

[14]*Id*. at 6 (citing Kraai Aff., ¶ 12-21).

5

in one action. Plaintiffs argue that such a stay would conserve the Court's resources, save the parties time and money, and avoid the unnecessary duplication of efforts and discovery if Plaintiffs are required to pursue their various claims in two different lawsuits.

Defendants oppose the stay, arguing, *inter alia*, that Plaintiffs' request for a stay until the specific date of March 1, 2011 is arbitrary and based on speculation. In addition, Defendants assert that they will be prejudiced by the stay, particularly since the case is already in the late stages of litigation. Finally, they argue that the stay will not simplify the issues for trial, and is, in reality, a belated motion for reconsideration of Judge Lungstrum's dismissal order.

## III. Applicable Law

"A motion to stay an action pending the resolution of a related matter in the United States Patent and Trademark Office is directed to the sound discretion of the court."[15] Indeed, the Supreme Court has recognized that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment . . . ."[16]

Generally speaking, in deciding whether to grant a stay, the court must weigh the benefits of the stay against the costs.[17] Some factors that the court may consider in determining whether a stay should be granted pending a decision by the PTO include the following: "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and

---

[15]*Braintree Labs., Inc. v. Nephro-Tech, Inc.*, No. 96-2459, 1997 WL 94237, at *8 (D. Kan. Feb. 26, 1997) (quoting *Rosenthal Mfg. Co. v. Thermal Equip., Inc.*, 1988 WL 383034, at *1 (D. Kan. Oct.12, 1988)).

[16]*Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

[17]*Broadcast Innovation, L.L.C. v. Charter*, No. 03-CV-2223-ABJ-BNB, 2006 WL 1897165, at *4 (D. Colo. July 11, 2006).

whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and on the court."[18]

IV.    **Analysis**

After carefully considering the facts presented and the parties' arguments, the Court concludes that the benefits of the requested stay do not outweigh the costs. Like Plaintiffs, the Court is also concerned with conserving time and the resources of this Court and the parties. The Court, however, believes those interests will be best served by bringing this two and one-half year old case to a resolution.

The Court agrees with Defendants that objective evidence does not support Plaintiffs' assertion that it is "relatively certain" that the PTO will issue a patent on the '563 Application by February 28, 2011. Indeed, the Court finds that Plaintiffs' claim that the PTO is likely to issue a patent on the '563 Application is highly speculative. Even assuming *arguendo*, that the PTO were to issue a patent on the '563 application by that date, there is nothing in the record to indicate that the PTO is likely to issue a patent on the '456 Application by that same time date. Thus, even if the issues relating to the '563 Application were to become ripe by the end of February 2011, the issues relating to the '456 Application would still not be ripe for determination.

Furthermore, the Court agrees with Defendants that a stay would not necessarily simplify the issues for trial. As Defendants point out, this is not a patent infringement case, where a reexamination process is pending before the PTO that might eliminate claims or prevent the

---

[18]*eSoft, Inc. v. Blue Coat Systs., Inc.,* 505 F. Supp. 2d 784, 787 (D. Colo 2007) (citations omitted) (applying factors to motion to stay pending resolution of reexamination proceeding in the PTO).

7

defendant from re-litigating issues of patent invalidity.[19] Rather, the issues in this case relate to Defendants' alleged misappropriation of trade secrets, unjust enrichment, and Defendant's breach of the Non-Disclosure Non-Use Agreement. No decisions by the PTO with respect to either the '563 or '456 Applications will directly affect the resolution of these causes of action, and the trial of these claims will not be simplified by granting the requested stay.

In addition, the status of this case, weighs in favor of denying the stay. As Judge Lungstrum observed in *Braintree Laboratories v. Nephro-Tech, Inc.*,[20] "[c]ourts have denied stays where undue prejudice would result or one party would suffer a clear tactical disadvantage; for instance, a stay may not be appropriate if discovery has been completed or the case is otherwise in a late stage.[21] Such concerns must be considered here. This case has been pending for two and one-half years. Fact discovery closed eight months ago, on December 31, 2009. Expert discovery closed on August 27, 2010, and the Pretrial Conference is set for September 22, 2010. Dispositive motions are due a short time after the Pretrial Conference, and the case is set for trial on March 1, 2011. The Court agrees with Defendants that to stay the case at this late stage of the litigation would prejudice Defendants.

In sum, the Court finds that the very speculative benefit that would inure to the parties by staying the action until March 2011 does not outweigh the costs to Defendants. The Court, in its discretion, therefore denies the request for stay.

---

[19]Most of the case law relating to stays pending action by the PTO has arisen in the context of reexamination proceedings before the PTO.

[20]No. 96-2459, 1997 WL 94237 (D. Kan. Feb. 26, 1997) (citation omitted).

[21]*Id*. at *1010 (citation omitted).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Stay (doc. 136) is denied.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 8th day of September 2010.

s/ David J. Waxse  
David J. Waxse  
U.S. Magistrate Judge

cc:　　All counsel and *pro se* parties